Slip Op. 08-101

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TARGET CORPORATION,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>     Defendant. | Before: Leo M. Gordon, Judge<br><br>Consol. Court No. 06-00383 |

**OPINION AND ORDER**

[Commerce's anticircumvention determination remanded.]

Dated: September 18, 2008

  Jochum Shore & Trossevin, P.C. (Marguerite E. Trossevin) for Plaintiff Target Corporation.

  Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Bruce M. Mitchell, Max F. Schutzman, William F. Marshall, Andrew T. Schutz) for Plaintiffs Qingdao Kingking Applied Chemistry Co., Ltd., Dalian Talent Gift Co., Ltd., Shanghai Autumn Light Enterprise Co., Ltd., Home Accent International (Honghzhou) Co., Ltd., Zhongshan Zhongnam Candle Manufacturer Co., Ltd., Nantucket Distributing Co., Inc., Shonfeld's (USA), Inc., Amstar Business Company Limited and Jiaxing Moonlight Candle Art Co., Ltd.

  Greenberg Traurig, LLP (Jeffrey S. Neeley, David R. Amerine) for Plaintiff Specialty Merchandise Corporation, Inc.

  Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand, Michael J. Dierberg); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Arthur D. Sidney), of counsel, for Defendant United States.

  Barnes & Thornburg LLP (Randolph J. Stayin, Karen A. McGee) for Defendant-Intervenor National Candle Association.

Gordon, Judge:   Plaintiffs Target Corporation ("Target"), Qingdao Kingking Applied Chemistry Co., Ltd., et al. ("Qingdao"), and Specialty Merchandise Corporation, Inc. ("SMC") challenge the U.S. Department of Commerce's ("Commerce") determination that petroleum wax candles with 50 percent or more palm or other vegetable-oil based waxes ("mixed-wax") are later-developed merchandise circumventing the antidumping duty order covering petroleum wax candles from China. See Petroleum Wax Candles from the People's Republic of China, 71 Fed. Reg. 59,075 (Dep't Commerce Oct. 6, 2006) (final determ. anticircumvention inquiry) ("Final Determination"), amended by Final Results Pursuant to Voluntary Remand, Target Corp. v. United States, Consol. Court No. 06-00383 (May 16, 2008) ("Voluntary Remand").   The court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2000)[1] and 28 U.S.C. § 1581(c) (2000).  As discussed below, this action is remanded to Commerce for further consideration.

## I.  Standard of Review

When reviewing an anticircumvention determination under 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c) (2000), the U.S. Court of International Trade sustains Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is

---

[1] Further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code, 2000 edition.

reasonable given the record as a whole.  See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).  Additionally, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005).

## II. Background

Commerce issued an antidumping duty order on petroleum wax candles from China in 1986.  Petroleum Wax Candles from the People's Republic of China, 51 Fed. Reg. 30,686 (Dep't Commerce Aug. 28, 1986) (antidumping duty order) ("Petroleum Wax Candle Order" or "Order").   In the less than fair value ("LTFV") proceeding Commerce defined the subject merchandise, in relevant part, as "petroleum wax candles made from petroleum wax."   Petroleum Wax Candles from the People's Republic of China, 51 Fed. Reg. 25,085 (Dep't Commerce July 10, 1986) (final less than fair value determination).   For the corresponding injury investigation, the U.S. International Trade Commission ("ITC") defined the domestic like product, in relevant part, as candles "composed of over 50 percent petroleum wax."   Candles from the People's Republic of China, USITC Pub. 1888 at 5, Inv. No. 731-TA-282 (Aug. 1986) (final injury determination) ("Original Injury Determination").

| subject merchandise (COMMERCE) | "petroleum wax candles **made from petroleum wax**" |
| --- | --- |
| domestic like product (ITC) | "candles **composed of over 50 percent petroleum wax**" |

The ITC therefore interpreted Commerce's redundant qualifier "made from petroleum wax" to mean "composed of more than 50 percent petroleum wax." See id. This percentage benchmark proved dispositive in subsequent Commerce scope determinations involving mixed-wax candles. Commerce ruled at least seven times in a seven-year period that the ITC's percentage-based like product definition mandated that mixed-wax candles (containing less than 50 percent petroleum wax) be excluded from the scope of the Petroleum Wax Candle Order.[2]

Central to these prior scope rulings is the unstated but fundamental tenet of antidumping law that the domestic like product must encompass the subject

---

[2] See Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "Costco Wholesale" (Dec. 10, 1998) (candles composed of 19% petroleum wax and 81% beeswax excluded from Order for not satisfying Commission's like product definition of petroleum wax candles); Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "Et Al Imports, Inc." (Dec. 11, 1998) (candles composed of 20% paraffin wax and 80% beeswax excluded from Order based upon the Commission's definition of the domestic like product); Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "Ocean State Jobbers, Inc." (Dec. 18, 1998) (candles composed of 20% petroleum wax and 80% beeswax excluded from Order based upon the Commission's definition of the domestic like product); Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "JC Penny Purchasing, Corp." (May 21, 2001) (candles composed of 42% petroleum wax and 58% palm oil excluded from Order for not satisfying the Commission's definition of domestic like product); Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "Leader Light, Inc." (Dec. 12, 2002) (candles containing less than 50% petroleum wax excluded from Order for not satisfying the Commission's definition of domestic like product); Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "Avon Products, Inc." (Nov. 17, 2003) (candles containing less than 50% petroleum wax excluded from Order for not satisfying the Commission's definition of domestic like product); Petroleum Wax Candles from the People's Republic of China, Final Scope Ruling, A-570-504, "Pier 1 Imports, Inc." (May 13, 2005) (candles with petroleum-based wax content less than 50 percent excluded from the Order pursuant to the Commission's like product definition and Commerce's treatment in prior scope rulings). All scope rulings for the Petroleum Wax Candle Order are available at http://ia.ita.doc.gov/download/candles-prc-scope/index.html.

merchandise: "an antidumping duty order must be supported by an ITC determination of material injury covering the merchandise in question." <u>Wheatland Tube Co. v. United States</u>, 21 CIT 808, 819, 973 F. Supp. 149, 158 (1997) (citing 19 U.S.C. § 1673), <u>aff'd</u>, 161 F.3d 1365 (Fed. Cir. 1998).

Rather than have Commerce repeat another conventional scope proceeding, the domestic interested party, National Candle Association ("NCA"), tried a different approach in 2004. NCA petitioned Commerce to initiate a later-developed merchandise anticircumvention inquiry and determine whether mixed-wax candles were circumventing the Order. Commerce initiated the inquiry. <u>Petroleum Wax Candles from the People's Republic of China</u>, 70 Fed. Reg. 10,962, 10,963 (Dep't Commerce Mar. 7, 2005) (notice of initiation anticircumvention inquiry) ("<u>Notice of Initiation</u>"). A later-developed merchandise anticircumvention inquiry is a specific type of scope inquiry governed by its own statutory provision, 19 U.S.C. § 1677j(d), which codified Commerce's administrative practice for analyzing whether later-developed merchandise fell within the scope of an antidumping duty order. H.R. REP. NO. 100-576, at 601 (1988) (Conf. Rep.), <u>reprinted in</u> 1988 U.S.C.C.A.N. 1547, 1634 ("This provision is intended to clarify and codify current Commerce Department authority, which has been recognized by the courts.")

As Commerce was commencing the later-developed merchandise anticircumvention inquiry, the ITC was coincidentally concluding a second five-year sunset review of the Petroleum Wax Candle Order. See <u>Petroleum Wax Candles from China</u>, USITC Pub. 3790, Inv. No. 731-TA-282 (July 2005) (second sunset review)

("Second Sunset Review").   The lone participant in the Second Sunset Review,

NCA, urged the ITC to re-examine the domestic like product definition from the Original

Injury Determination and include "all blended candles" regardless of the proportion of

petroleum wax.   Second Sunset Review at 7.   The ITC obliged and redefined the

domestic like product "to include all blended candles," or more simply, candles

"containing any amount of petroleum wax."  Id. at 9.   In addition, the ITC concluded that

revocation of the Petroleum Wax Candle Order "would be likely to lead to continuation

or recurrence of material injury to an industry in the United States within a reasonably

foreseeable time."  Id. at 3.  No party challenged the Second Sunset Review.

        Subsequently, Commerce completed the anticircumvention inquiry and

determined that mixed-wax candles containing "any amount" of petroleum wax are

within the scope of the Petroleum Wax Candle Order.   Final Determination, 71 Fed.

Reg. at 59,077-78.  Plaintiffs then commenced this action.  Commerce, in turn, sought a

voluntary remand which the court granted.  In the Voluntary Remand Commerce slightly

modified its legal analysis but did not change its determination.  See discussion infra at

pp. 12-13.   Plaintiffs raise a number of challenges to Commerce's determination,

including:

        (1) that Commerce's interpretation of the phrase "later-developed merchandise"
to cover merchandise that was in existence but commercially unavailable during the
original investigation is contrary to the plain meaning of 19 U.S.C. § 1677j(d), and
further, that Commerce's finding that mixed-waxed candles were commercially
unavailable at the time of the original investigation is unsupported by substantial
evidence;

(2) that Commerce's initiation of the anticircumvention inquiry on mixed-wax candles was contrary to Commerce's scope regulation, 19 C.F.R. § 351.225 (2004),[3] the prior mixed-wax candle scope rulings, and case law governing the initiation of scope inquiries; and

(3) that Commerce's inclusion of mixed-wax candles within the scope of the Order is a legally impermissible expansion of the Petroleum Wax Candle Order contrary to the domestic like product definition.[4]

As explained more fully below, the court is not persuaded by these arguments; nevertheless, the court cannot sustain Commerce's later-developed merchandise anticircumvention determination and therefore remands the matter to Commerce for further consideration.

### III. Discussion

### A. Later-Developed Merchandise

### 1. Commercial Availability Standard

A critical legal issue for Commerce during the administrative proceeding was whether mixed-wax candles were "later-developed merchandise."  This issue arose because record evidence indicated that mixed-wax candles may have existed at the

---

[3] Further citations to Title 19 of the Code of Federal Regulations are to the relevant provisions of the 2004 edition.

[4] Plaintiffs also challenge (1) Commerce's finding that mixed-wax candles are the same class or kind of merchandise as petroleum wax candles (the subject merchandise) and specifically that four of Commerce's findings in applying the statutory factors — the physical characteristics of the product, the expectations of the ultimate purchasers, the channels of trade in which the product is sold, and the manner in which the product is advertised and displayed — are unsupported by substantial evidence; and Plaintiffs also argue that (2) Commerce's assessment of antidumping duties, pursuant to 19 C.F.R. § 351.225(l)(3), on Plaintiffs' entries made after the initiation of the anticircumvention inquiry is an impermissible retroactive application of the law.  The court does not resolve these issues in this decision.

time of the original investigation.   Section 1677j(d)(1) defines "later-developed merchandise" as "merchandise <u>developed after</u> an [antidumping] investigation is initiated." 19 U.S.C. § 1677j(d)(1) (emphasis added).   The question for Commerce was whether mixed-wax candles were "developed" by the time of the initiation of the investigation or "developed" sometime thereafter.

Commerce touched upon the meaning of "developed" in several prior anticircumvention proceedings.   "In each case, [Commerce] addressed the 'commercial availability' of the later-developed merchandise in some capacity, such as the product's presence in the commercial market or whether the product was fully 'developed,' i.e., tested and ready for commercial production." <u>Final Determination</u>, 71 Fed. Reg. at 59,076-77 (citing <u>Portable Electronic Typewriters from Japan</u>, 55 Fed. Reg. 47,358 (Dep't Commerce Nov. 13, 1990) (final scope ruling), <u>Electrolytic Manganese Dioxide from Japan</u>, 57 Fed. Reg. 395 (Dep't Commerce Jan. 6, 1992) (final scope ruling), and <u>Erasable Programmable Read Only Memories from Japan</u>, 57 Fed. Reg. 11,599 (Dep't Commerce Apr. 6, 1992) (final scope ruling)).   From these prior administrative precedents Commerce derived a commercial availability standard for the term "developed."   Simply stated, to be "developed" a product must be commercially available—present in the commercial market or tested and ready for commercial production.   Commerce offered a straightforward rationale for the standard: "[T]he product's actual presence in the market at the time of the LTFV investigation is a necessary predicate of its inclusion or exclusion from the scope of an antidumping duty order."   <u>Issues and Decision Memorandum for the Later-Developed Merchandise</u>

Anticircumvention Inquiry of the Antidumping Duty Order on Petroleum Wax Candles from the People's Republic of China, at 23, A-570-504 (Sept. 29, 2006), available at http://ia.ita.doc.gov/frn/summary/prc/E6-16613-1.pdf ("Decision Memorandum").

Plaintiffs challenge the commercial availability standard, arguing that "developed" has one and only one meaning: created. Target Mot. J. Agency R. at 15; Qingdao Mot. J. Agency R. at 25-26. It is an understandable position; if developed means created, and mixed-wax candles existed at the time of the initiation of the investigation, they cannot be "later-developed."

The two-step framework provided in Chevron, 467 U.S. at 842-45, governs judicial review of Commerce's interpretation of the antidumping statute. Dupont Teijin Films USA, LP, 407 F.3d at 1215. The court first considers whether Congressional intent on the issue is clear, and if not, the court next considers whether Commerce's interpretation is reasonable. Id. The word "developed" has many meanings. See "developed." The American Heritage® Dictionary of the English Language, Fourth Edition. Houghton Mifflin Company, 2004; Dictionary.com entry, http://dictionary.reference.com/browse/developed (last visited Sept. 18, 2008). Although Plaintiffs' proposed interpretation represents one possibility, Commerce's represents another. Therefore, this is not a matter of giving effect to one, clear, Congressional intent (Chevron step one), but instead of reviewing the reasonableness of Commerce's proposed interpretation (Chevron step two). To determine whether Commerce's interpretation is reasonable, the court "may look to 'the express terms of the provisions at issue, the objectives of those provisions, and the objectives of the

antidumping scheme as a whole.'" <u>Wheatland Tube Co. v. United States</u>, 495 F.3d

1355, 1361 (Fed. Cir. 2007) (citing <u>NSK Ltd. v. United States</u>, 26 CIT 650, 654,

217 F. Supp. 2d 1291, 1296-97 (2002)).

Commerce's commercial availability standard is reasonable.  As Commerce

explained, "the product's actual presence in the market at the time of the LTFV

investigation is a necessary predicate of its inclusion or exclusion from the scope of an

antidumping duty order." <u>Decision Memorandum</u> at 23.  The later-developed

merchandise provision is designed to prevent circumvention of an antidumping order by

a comparable product (as determined by the <u>Diversified Products</u>[5] analysis) for the

subject merchandise.  Commerce's interpretation, which reaches products that emerge

in the market after imposition of the antidumping order, accomplishes this objective.

### 2.  Commerce's Finding of Commercial Unavailability

Qingdao challenges Commerce's determination that mixed-wax candles were

commercially unavailable during the LTFV investigation.  Qingdao Mot. J. Agency R. at

37-44.  Implicit in Qingdao's challenge is an assumption that Commerce made a finding

of commercial unavailability for mixed-wax candles, which it did in some vague sense:

> [H]aving received no information either through relevant product
> brochures, annual sales data, or any other information from any party
> demonstrating that mixed-wax candles were commercially available prior
> to the LTFV investigation, [Commerce] <u>finds that it cannot definitively
> conclude</u> that mixed-wax candles were available in the market at the time
> of the LTFV investigation.

---

[5] The factors set forth in 19 U.S.C. § 1677j(d)(1) to determine whether later-developed merchandise is within the scope of an outstanding antidumping duty order are derived from the court's decision in <u>Diversified Prods. Corp. v. United States</u>, 6 CIT 155, 162, 572 F. Supp. 883, 889 (1983).  They are commonly referred to as the <u>Diversified Products</u> criteria.

Decision Memorandum at 26 (emphasis added).

Note that Commerce "cannot definitively conclude." Id. This language creates confusion, at least for purposes of judicial review. Rather than make a straightforward finding that mixed-wax candles were commercially unavailable at the time of the LTFV, Commerce introduced an unexplained, subjective, evidentiary standard—definitive conclusiveness—and found this standard had not been met. It is a puzzling turn of phrase; it almost bespeaks an administrative presumption of commercial unavailability—rebuttable by definitively conclusive evidence (whatever that may be) of commercial availability. Commerce, though, directly contradicted such notions:

> [B]oth Respondents and Petitioners had the burden to establish whether mixed-wax candles were commercially available at the time of the LTFV investigation. All parties were given the opportunity to submit evidence that mixed-wax candles were available or evidence that mixed-wax candles were not available in the market. Accordingly, the burden did not rest on any single party.

Id. at 25. The net effect of all this is that the court cannot review Commerce's new, subjective, evidentiary standard and the associated "finding" in its present posture, and therefore must remand to Commerce for further consideration.

On remand Commerce has two choices: (1) Commerce may make a straightforward finding of commercial unavailability at the time of the LTFV, which the court can then review for reasonableness (substantial evidence review); or (2) Commerce may further explain its proposed evidentiary standard as a reasonable application and interpretation of the later-developed merchandise anticircumvention provision. Once completed, Commerce must share it with the parties and provide an

opportunity to address that standard as it applies to the record evidence.  Commerce

can then make a factual finding based on the proposed standard.  The court will then

review the proposed standard for reasonableness under <u>Chevron</u> step two, and

evaluate whether Commerce's factual finding is supported by substantial evidence

(or more simply, for reasonableness).

### 3. Significant Technological Advance or Significant Alteration of the Merchandise Involving Commercially Significant Changes

During the anticircumvention proceeding, Commerce referred to the legislative

history for the ITC consultation requirement of § 1677j(e) and discovered what it thought

was an additional definitional requirement for "later-developed merchandise."  According

to Commerce, "[t]he only other source of guidance available [for the definition of 'later-

developed merchandise'] is the brief discussion of later-developed products in the

legislative history for section 781(d) of the Act, which although addressing later-

developed products with respect to the ITC's injury analysis, we find is also relevant to

[Commerce]'s analysis."  <u>Final Determination</u>, 71 Fed. Reg. at 59,076.  Commerce then

selectively quoted the legislative history, mistakenly representing that the history

defined "a later-developed product as a product that has been produced as a result of a

'significant technological advancement [sic] or a significant alteration of the

merchandise involving commercially significant changes.'"  <u>Id.</u> (emphasis omitted)

(quoting H.R. REP. NO. 100-576, at 603 (1988) (Conf. Rep.), <u>reprinted in</u> 1988

U.S.C.C.A.N. 1547, 1636).   Commerce purportedly abandoned its reliance on the

legislative history of the ITC consultation requirement after reconsidering its

interpretation of later-developed merchandise pursuant to the voluntary remand in this

matter.  <u>Voluntary Remand</u> at 5.  Commerce, though, did not abandon the additional

definitional requirements.  Commerce maintained that later-developed merchandise

must have resulted from a significant technological advance or significant alteration to

an earlier product.  <u>Id.</u>

     Not much need be said here other than that Commerce misread the ITC

consultation provision and its legislative history.  The full passage from which

Commerce selectively quoted in the <u>Final Determination</u> reads:

> With respect to later-developed products, <u>a significant injury issue can
> arise if</u> there is a significant technological development or a significant
> alteration of the merchandise involving commercially significant changes
> in the characteristics and uses of the product. In providing such advice,
> the ITC should not focus narrowly on the product's features at the time the
> order was issued, but should analyze its general characteristics and uses
> in light of its prior determination. <u>Thus, a later-developed product
> incorporating a new technology that provides additional capability, speed,
> or functions would be covered by the order as long as it has the same
> basic characteristics and uses</u>.

H.R. REP. NO. 100-576, at 603 (1988) (Conf. Rep.), <u>reprinted in</u> 1988 U.S.C.C.A.N.

1547, 1636 (emphasis added).  Likewise, the ITC consultation provision reads:

(e) Commission advice

    (1) Notification to Commission of proposed action

    Before making a determination--

    . . .

        (C) under subsection (d) of this section with respect to any later-
        developed merchandise <u>which incorporates a significant
        technological advance or significant alteration of an earlier product</u>,

    with respect to any antidumping or countervailing duty order or finding
    as to which the Commission has made an affirmative injury
    determination, the administering authority shall notify the Commission
    of the proposed inclusion of such merchandise in such countervailing

or antidumping order or finding. Notwithstanding any other provision of law, a decision by the administering authority regarding whether any merchandise is within a category for which notice is required under this paragraph is not subject to judicial review.

19 U.S.C. § 1677j(e) (emphasis added).

The ITC consultation provision does not define or limit the meaning of later-developed merchandise. What it does is identify specific types of later-developed merchandise that may raise "significant injury issue[s]" and require Commerce to consult with the ITC before including those specific types of later-developed merchandise within the scope of an order. H.R. REP. NO. 100-576, at 603 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1636. Simply put, it does not limit the universe of "later-developed merchandise" to products that involve a significant technological advance or significant alteration as Commerce suggests; it identifies a subset of "later-developed merchandise" that requires consultation with the ITC. Commerce, therefore, erred by inferring from § 1677j(e) that "later-developed merchandise" under § 1677j(d) must in every instance involve a significant technological advance or significant alteration of subject merchandise. Ironically, by defining "later-developed merchandise" to require a significant alteration of the subject merchandise and then making a factual finding that mixed-wax candles involve a significant alteration of petroleum wax candles, Commerce may have created a "significant injury issue" where none otherwise exists.

In any event Commerce's interpretation is contrary to the clear Congressional intent of § 1677j(e), and correspondingly, is one to which the court cannot defer. The court must therefore remand the matter to Commerce to correct its erroneous

interpretation of the statute.  On remand Commerce may, of course, continue to limit what constitutes "later-developed merchandise," so long as whatever limitation Commerce divines is a reasonable interpretation of the statute.

### B. Initiation of the Anticircumvention Inquiry

Qingdao challenges the initiation of the anticircumvention inquiry as contrary to (1) Commerce's regulation for scope determinations, 19 C.F.R. § 351.225, and the prior mixed-wax candle scope rulings, and (2) Wheatland Tube, 161 F.3d at 1371.  Qingdao Mot. J. Agency R. at 10-22.

Commerce's procedures for conventional scope inquiries are governed by 19 C.F.R. § 351.225.  In determining whether a product is included within the scope of an antidumping duty order, Commerce examines the scope application and the descriptions of the merchandise set forth in the antidumping petition, the initial investigation, and all prior determinations (including prior scope determinations) of Commerce and the ITC.  19 C.F.R. § 351.225(d) & (k)(1); Crawfish Processors Alliance v. United States, 483 F.3d 1358, 1362-63 (Fed. Cir. 2007).  If these descriptions conclusively determine whether disputed merchandise is subject to the scope of an order, Commerce issues a final determination that the merchandise is covered, or not covered, by the order.  Id.  If these descriptions are not dispositive, Commerce initiates a scope inquiry and considers the Diversified Products criteria: the physical characteristics of the product, the expectations of the ultimate purchasers, the ultimate use of the product, the channels of trade in which the product is sold, and the manner in

which the product is advertised and displayed. 19 C.F.R. § 351.225(e) & (k)(2); Crawfish Processors Alliance, 483 F. 3d at 1362.

In at least seven prior conventional scope determinations involving mixed-wax candles, Commerce found the ITC's like product definition—candles composed of over 50 percent petroleum wax—to be dispositive of whether mixed-wax candles were subject to the scope of the Petroleum Wax Candle Order. See final scope rulings supra note 2. In each instance, rather than initiating a scope inquiry, Commerce issued a final ruling excluding mixed-wax candles from the Order pursuant to 19 C.F.R. § 351.225(d) and (k)(1). Qingdao wants similar treatment here. Qingdao Mot. J. Agency R. at 12-13. Qingdao argues that Commerce should not have initiated the anticircumvention inquiry, but rather should have issued a final ruling excluding mixed-wax candles on the basis of the ITC's original domestic like product definition, which the ITC had not yet redefined in the Second Sunset Review. Id.

Commerce, though, determined that the threshold determination of 19 C.F.R. § 351.225(d) and (k)(1) for conventional scope inquiries did not apply to NCA's petition for a later-developed merchandise anticircumvention inquiry. See Petroleum Wax Candles from the People's Republic of China, 71 Fed. Reg. 32,033, 32,036-37 (Dep't Commerce June 2, 2006) (prelim. determ. anticircumvention inquiry) ("Preliminary Determination"); see also Decision Memorandum at 11-12. Commerce instead noted that the later-developed merchandise anticircumvention provision requires that Commerce shall consider the Diversified Products criteria enumerated in 19 U.S.C. § 1677j(d)(1)(A)-(E). Preliminary Determination, 71 Fed. Reg. at 32,036-37.

Commerce distinguished conventional scope proceedings from later-developed merchandise anticircumvention inquiries:

> [Commerce] considered its prior scope ruling finding certain mixed-wax candles outside the scope of the Order. While [Commerce] recognizes that it made previous such scope rulings, [Commerce] notes that the factors that govern [Commerce]'s analysis of whether a product is within the scope of the Order differ for anticircumvention inquiries and other scope determinations. In scope rulings under section 351.225(k)(1) of [Commerce]'s regulations, [Commerce] relies upon relevant documents . . . in determining whether a particular product is included within the scope of an antidumping order. If [Commerce] finds that the descriptions are dispositive, [Commerce] will issue a final scope ruling of whether the product is within the scope of the antidumping duty order. But when the descriptions are not dispositive, [Commerce] will further consider the additional five factors, as stipulated in section 351.225(k)(2) of [Commerce]'s regulations.
>
> * * *
>
> Later-developed merchandise anticircumvention inquiries are governed by [19 U.S.C. § 1677j(d)], which instructs [Commerce] to determine whether the product in question was developed after the investigation was initiated, and, if so, whether it is within the scope of the order. If [Commerce] finds that the product subject to the inquiry is later-developed, then [19 U.S.C. §1677j(d)(1)] instructs [Commerce] to consider [the Diversified Products factors]. In contrast to the prior scope rulings, in the present inquiry, [Commerce] is obligated, pursuant to [19 U.S.C. § 1677j(d)], to make a determination by explicitly analyzing these additional factors.

Preliminary Determination, 71 Fed. Reg. at 32,036-37 (citations omitted).

Plaintiffs argue that 19 C.F.R. § 351.225 "make[s] no distinction in the preliminary inquiry Commerce is required to make whether dealing with a conventional scope application or a scope application based upon alleged circumvention. In either case, the agency is first required to determine if the language of the order, etc. is dispositive [of scope]." Qingdao Mot. J. Agency R. at 16 (emphasis omitted).

When reviewing Commerce's interpretations of its own regulations, the court does not "decide which among several competing interpretations best serves the regulatory purpose." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). Rather, the court must accord Commerce's interpretation of its own regulation "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Id. (quoting Udall v. Tallman, 380 U.S. 1, 16-17 (1965)); see also Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007).

Commerce's interpretation of 19 C.F.R. § 351.225 is not plainly erroneous or inconsistent with the regulation. Paragraph (j), the scope provision governing "later-developed merchandise," states that "in determining whether later-developed merchandise is within the scope of an antidumping . . . duty order, the Secretary will apply [19 U.S.C. § 1677j(d)]." 19 C.F.R. § 351.225(j). Commerce followed this directive. Rather than applying 19 C.F.R. § 351.225 (d), (e), and (k), Commerce applied 19 U.S.C. § 1677j(d).

Section 351.225(k), in turn, exempts later-developed merchandise proceedings from the conventional scope procedures set forth in subparagraphs (k)(1) and (k)(2). 19 C.F.R. § 351.225(k) (Paragraph (k) is limited to "those scope determinations that are not covered under paragraphs (g) through (j)."). Since paragraph (d) incorporates the criteria of paragraph (k)(1), the exemption language of paragraph (k) renders paragraph (d) equally inapplicable. 19 C.F.R. § 351.225(d). Thus, later-developed merchandise anticircumvention inquiries fall outside the purview of the threshold inquiry of

paragraphs (d) and (k)(1). Commerce's construction of the scope regulation is therefore

not plainly erroneous or inconsistent with the terms of 19 C.F.R. § 351.225.

As a practical matter, Commerce does survey the petition, the investigation, and

all prior proceedings at the onset of a later-developed merchandise anticircumvention

inquiry to assess whether a product is in fact <u>later-developed</u>, which common sense

dictates is the more pertinent threshold issue:

> In determining whether [the merchandise] is appropriately considered a later-developed product under 19 U.S.C. 1677j(d), we evaluated the arguments raised by interested parties in light of the language of the statute, regulations, and the applicable legislative history . . . . A product developed after the petition and investigation cannot have been specifically excluded from the scope of the original investigation. Accordingly, if [the merchandise] is later-developed, the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the [ITC] cannot be dispositive. However, if a product is developed before an antidumping case is initiated, the later-developed product provision is clearly inapplicable.

<u>Electrolytic Manganese Dioxide From Japan</u>, 56 Fed. Reg. 56,977, 56,979-80

(Dep't Commerce Nov. 7, 1991) (prelim. scope ruling).   <u>See also</u> <u>Erasable</u>

<u>Programmable Read Only Memories From Japan</u>, 57 Fed. Reg. 11,599, 11,602

(Dep't Commerce Apr. 6, 1992) (final scope ruling).

When considering whether to initiate the anticircumvention inquiry on mixed-wax

candles, Commerce reviewed the antidumping duty petition, the Petroleum Wax Candle

Order, and the ITC's <u>Original Injury Determination</u> and found "no clear basis for

[Commerce] to make a conclusive determination that candles with non-petroleum waxes

in a different proportion are not later-developed merchandise." <u>See</u> <u>Notice of Initiation</u>,

70 Fed. Reg. at 10,964-65.

Plaintiffs challenge this finding. Relying on <u>Wheatland Tube</u>, 161 F.3d at 1371,

Qingdao contends that the description of the merchandise subject to the Petroleum Wax

Candle Order "unequivocally" excludes mixed-wax candles, and thus initiation of the

inquiry was legally impermissible. Qingdao Mot. J. Agency R. at 18-22. In <u>Wheatland</u>

<u>Tube</u> the antidumping duty order expressly excluded "line pipe" and "standard pipe that

is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil

or gas pipelines," <u>Wheatland Tube</u>, 161 F.3d at 1367 (emphasis omitted), which were

known products with specific applications in the circular welded non-alloy steel pipe

markets. On that basis the U.S. Court of International Trade precluded Commerce from

conducting a minor alterations inquiry for the excluded products because, as a matter of

law, no alteration had been made to the subject merchandise. <u>Wheatland Tube</u>, 21 CIT

at 824-26, 973 F. Supp. at 162-64 ("[T]he statute is unambiguous and applies only to

merchandise arguably within the scope of the antidumping duty order which is altered to

be outside the order, the minor alterations provision does not apply to the present

case."), <u>aff'd</u>, 161 F.3d at 1370-71.

The facts here are different. The Order covers "petroleum wax candles made

from petroleum wax." Petroleum Wax Candle Order, 51 Fed. Reg. at 30,686.

Commerce found that this phrase did not definitively resolve the issue of whether

mixed-wax candles could be later-developed merchandise. For Commerce, that was an

open question for the anticircumvention inquiry, which is a reasonable threshold

determination. <u>See</u>, <u>e.g.</u>, <u>Nippon Steel Corp. v. United States</u>, 219 F.3d 1348, 1356

(Fed. Cir. 2000) (The statement in <u>Wheatland Tube</u> that the minor alterations provision

does not apply to products unequivocally excluded from the order "cannot be read as barring Commerce from conducting an inquiry to determine whether the addition of a small amount of boron constituted a minor alteration that still left the product subject to the antidumping duty order.").

### C. Whether Commerce's inclusion of mixed-wax candles within the Order impermissibly expands the Order contrary to the domestic like product definition

Plaintiffs also argue that Commerce's inclusion of mixed-wax candles within the scope of the Order represents an impermissible expansion of the Order contrary to the domestic like product definition.  Plaintiffs correctly note that the original like product definition, candles "composed of over 50 percent petroleum wax," Original Injury Determination at 5, did not cover mixed-wax candles, a fact repeatedly reinforced by Commerce's subsequent scope determinations involving mixed-wax candles.  The ITC, however, changed the like product definition during the Second Sunset Review to include candles "containing any amount of petroleum wax," a change that ostensibly cured any potential like product issues.  Second Sunset Review at 9.

Although the ITC's expansion of the like product definition 19 years after the Original Injury Determination may raise interesting issues, see, e.g., Ad Hoc Shrimp Trade Action Comm. v. United States, 515 F.3d 1372, 1384 (Fed. Cir. 2008) ("the ITC has no independent authority to expand the scope of an antidumping investigation"), no one challenged the Second Sunset Review.  That decision is final and conclusive (as well as the domestic like product definition that it contains) and the court may not entertain a collateral attack to the Second Sunset Review within this proceeding

because the jurisdictional predicates for judicial review of the <u>Second Sunset Review</u> have not been satisfied. <u>See</u> 19 U.S.C. § 1516a(a)(2)(A). As the domestic like product now covers candles "containing any amount of petroleum wax," Commerce's inclusion of mixed-wax candles within the scope of the Order does not impermissibly expand the scope of the Order contrary to the domestic like product definition.

## IV. Conclusion

The court concludes that (1) Commerce's commercial availability standard is reasonable, but Commerce's finding that it could not "definitively conclude" that mixed-wax candles were commercially available during the LTFV investigation cannot be reviewed in its present posture; (2) Commerce's requirement that "later-developed merchandise" must in every instance involve a significant technological advance or significant alteration of the subject merchandise is not in accordance with 19 U.S.C. § 1677j(e); (3) Commerce's initiation of the anticircumvention inquiry was in accordance with law; and (4) Commerce's inclusion of mixed-wax candles within the scope of the Order does not impermissibly expand the scope of the Order contrary to the domestic like product definition.

Accordingly, it is hereby

**ORDERED** that this action is remanded to the U.S. Department of Commerce ("Commerce") to reconsider its finding that it "cannot definitively conclude that mixed-wax candles were available in the market at the time of the LTFV investigation." On remand Commerce may (a) make a straightforward finding of commercial unavailability at the time of the LTFV, or (b) further explain its proposed "definitive conclusiveness"

evidentiary standard as a reasonable application and interpretation of the "later-developed merchandise" anticircumvention provision.  Commerce must share the new proposed standard and accompanying explanation with the parties and provide them with an opportunity to address that standard as it applies to the record evidence. Commerce can then make a factual finding based on the proposed standard; and it is further

**ORDERED** that Commerce's requirement that "later-developed merchandise" must in every instance involve a significant technological advance or significant alteration of the subject merchandise is not in accordance with 19 U.S.C. § 1677j(e), and Commerce must therefore reconsider this aspect of its definition of later-developed merchandise; and it is further

**ORDERED** that Commerce is to file the remand results on or before November 12, 2008; and it is further

**ORDERED** that the parties are to file a proposed scheduling order on or before November 25, 2008, for the submission of comments with page limits on the remand results.


                                          /s/ Leo M. Gordon
                                          Judge Leo M. Gordon


Dated: September 18, 2008
       New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____        By: _____
                                              Deputy Clerk